FILED

10-1-14
OCT - 1 2014

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE LEINENWEBER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **14 CR 551** |
| | ) | |
| v. | ) | Violations: Title 7, United States Code, |
| | ) | Sections 6c(a)(5)(C) and 13(a)(2); Title |
| MICHAEL COSCIA | ) | 18, United States Code, Section 1348 |

COUNT ONE
(Commodity Fraud)

MAGISTRATE JUDGE COX

The SPECIAL SEPTEMBER 2014 GRAND JURY charges:

1.    At times material to this indictment:

a.    High-frequency trading was a form of automated trading that used computer algorithms for decision making and the placement of trading orders, employed technology that was designed to enable the trader to communicate with markets as quickly as possible (usually in times measured in $1/1000^{th}$ of a second, also known as a "millisecond"), and involved the entry of a high volume of orders, quotes, or cancelations of orders.

b.    Futures contracts were traded on contract markets designated pursuant to the Commodity Exchange Act by the Commodity Futures Trading Commission, the federal agency established by statute to regulate transactions involving the purchase and sale of futures contracts. The Chicago Mercantile Exchange, the Chicago Board of Trade, the New York Mercantile Exchange, and Commodity Exchange, Inc. were designated contract markets, and were part of the CME Group, Inc.

c.    Defendant MICHAEL COSCIA was registered as a floor trader with the CFTC beginning in 1988, and he started trading that year.

d.    COSCIA was the manager and sole owner of Panther Energy Trading LLC, which he formed in 2007. COSCIA created and implemented Panther's trading strategies, and managed and supervised the other traders at Panther regarding the execution of his strategies.

e.    Futures contracts were standardized, legally binding agreements to buy or sell a specific product or financial instrument in the future. The buyer and seller of a futures contract agreed on a price today for a product or financial instrument to be delivered or settled in cash on a future date. The minimum price increment at which a futures contract could trade was called a "tick," and the value of a tick for each contract was set by the futures exchange.

f.    Traders placed orders in the form of "bids" to buy or "offers" to sell a futures contract. An order was "filled" or "executed" when a buyer and seller bought and sold a particular contract. It was unlawful for traders to bid or offer with the intent to cancel the bid or offer before execution.

g.    CME Group operated a global electronic trading platform called Globex, which utilized computer servers located in Chicago and Aurora, Illinois. COSCIA rented servers that were located in Chicago, and used those servers to place futures contract orders using Globex. CME Group markets offered futures contract

2

trading in various commodities, including gold, soybean meal, soybean oil, and high-grade copper, and futures contracts that reflected changes of the value of the Euro and British Pound in U.S. dollars.

      h.    ICE Futures Europe was a futures exchange based in London.

2.    Beginning in or around August 2011, and continuing until in or around October 2011, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL COSCIA,

defendant herein, participated in a scheme to defraud other participants in the CME Group markets and the ICE Futures Europe market in connection with a commodity for future delivery, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of a commodity for future delivery, which scheme is further described below.

3.    It was part of the scheme that, in and around August 2011, COSCIA devised, implemented, and executed a high-frequency trading strategy in which he entered large-volume orders that he intended to immediately cancel before they could be filled by other traders. COSCIA devised this strategy to create a false impression regarding the number of contracts available in the market, and to fraudulently induce other market participants to react to the deceptive market information that he created. COSCIA's strategy moved the market in a direction favorable to him, enabling him to purchase contracts at prices lower than, or sell contracts at prices higher than, the prices

3

available in the market before he entered and canceled his large-volume orders. COSCIA then repeated this strategy in the opposite direction to immediately obtain a profit by buying futures contracts at a lower price than he paid for them, or by selling contracts at a higher price than he paid for them. As a result of this strategy, COSCIA made approximately $1,592,867.

4.     It was further part of the scheme that COSCIA designed computer programs named Flash Trader and Quote Trader to implement his strategy, and instructed a computer programmer to create the programs. COSCIA gave the computer programmer instructions specifying how COSCIA wanted the programs to operate in particular market conditions.

5.     It was further part of the scheme that COSCIA used the Flash Trader and Quote Trader programs in 17 different CME Group markets, and in three different markets on the ICE Futures Europe exchange to execute his fraudulent trading strategy.

6.     It was further part of the scheme that COSCIA's trading programs looked for market conditions such as price stability, low volume at the best prices, and a narrow bid-ask spread—that is, the difference between the prices at which prospective purchasers were willing to buy and prospective purchasers were willing to sell—because his fraudulent trading strategy worked best under these conditions.

7.     It was further part of the scheme that COSCIA's trading programs sometimes placed a "ping order" of one contract to test the market and ensure that market

4

conditions would allow his fraudulent trading strategy to work well.

8.     It was further part of the scheme that COSCIA designed his trading programs to place a "trade order" on one side of the market, intending that the trade order be filled.   COSCIA profited from his fraudulent strategy by filling the "trade order."

9.     It was further part of the scheme that COSCIA designed his programs to place several layers of "quote orders" on the other side of the market from his trade orders to create the illusion of market interest.   COSCIA's quote orders were either orders to buy contracts at a price higher than the prevailing offer, or orders to sell contracts at a price lower than the prevailing bid.   The quote orders would typically be the largest orders in the market within three ticks of the best bid or offer price, usually doubling or tripling the total quantity of contracts within the best bid or offer price.

10.     It was further part of the scheme that COSCIA designed his programs to cancel the quote orders within a fraction of a second automatically, without regard to market conditions, even if the market moved in a direction favorable to the quote orders. COSCIA programmed the quote orders to cancel quickly and automatically because he did not intend for the quote orders to be filled when he entered them, but instead intended to trick other traders into reacting to the false price and volume information he created with his fraudulent and misleading quote orders.   COSCIA intended to, and did, mislead other traders, causing them to react, because his quote orders appeared to represent a substantial change in the market.

11. It was further part of the scheme that COSCIA designed his programs to cancel all fraudulent and misleading quote orders immediately if any of the quote orders were even partially filled because he did not intend and did not desire the quote orders to be filled when he entered them, and intended to trick other traders into reacting to the false price and volume information created by his fraudulent orders.

12. After COSCIA filled his trade order through the use of fraudulent and misleading quote orders, he immediately entered a second trade order on the other side of the market. COSCIA then used misleading quote orders in the manner described in paragraphs 9, 10, and 11, causing the second trade order to be filled. COSCIA made a profit on the difference in price between the first and second trade orders.

13. It was further part of the scheme that, as one example, on or about September 1, 2011, at approximately 4:54 a.m., COSCIA caused a buy order to be entered in the Euro FX market for 14 contracts at the price of 14288, lower than any offer in the market. Approximately 11 milliseconds later, COSCIA caused three large sell orders to be entered: 91 contracts at the price of 14291; 99 contracts at the price of 14290; and 61 contracts at the price of 14289, and market prices fell. Approximately seven milliseconds later, COSCIA's buy order was filled. Approximately six milliseconds later, COSCIA caused all three of his large sell orders to be canceled. Approximately five milliseconds after his last large sell order was canceled, COSCIA caused a sell order to be entered for 14 contracts at the price of 14289, higher than any

bid on the market. Approximately 22 milliseconds later, COSCIA caused four large buy orders to be entered: 88 contracts at the price of 14284; 88 contracts at the price of 14286; 88 contracts at the price of 14287; and 61 contracts at the price of 14288. Approximately nine milliseconds later, COSCIA's sell order was filled. Approximately five milliseconds later, COSCIA caused all four of his large buy orders to be canceled. By entering large orders that he intended to cancel at the time he placed them, and caused to be canceled before other traders could fill them, COSCIA made a profit by buying 14 contracts at 14288 and then selling them at 14289 less than one second later.

14. It was further part of the scheme that COSCIA did misrepresent, conceal, and hide, and cause to be misrepresented, concealed and hidden, the true acts and the purposes of the acts done in furtherance of the scheme.

15.     On or about September 1, 2011, at approximately 4:54 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL COSCIA,

defendant herein, knowingly executed the scheme by transmitting and causing to be transmitted to a CME Group server Euro FX currency futures market orders that he caused to be programmed to quickly cancel in order to prevent other market participants from filling them, which fraudulently represented the state of the market, so he could purchase 14 contracts at a below-market price and then sell them immediately thereafter for a higher price, in order to obtain a profit of approximately $175 in less than a second;

In violation of Title 18, United States Code, Section 1348.

8

## COUNT TWO
### (Commodity Fraud)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.    Paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2.    On or about September 2, 2011, at approximately 9:39 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MICHAEL COSCIA,

defendant herein, knowingly executed the scheme by transmitting and causing to be transmitted to a CME Group server gold commodity futures contract orders that he caused to be programmed to quickly cancel in order to prevent other market participants from filling them, which fraudulently represented the state of the market, so he could purchase 28 contracts at a below-market price and then sell them immediately thereafter for a higher price, in order to obtain a profit of approximately $560 in less than a second;

In violation of Title 18, United States Code, Section 1348.

COUNT THREE
(Commodity Fraud)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.  Paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2.  On or about September 12, 2011, at approximately 11:54 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL COSCIA,

defendant herein, knowingly executed the scheme by transmitting and causing to be transmitted to a CME Group server soybean meal commodity futures contract orders that he caused to be programmed to quickly cancel in order to prevent other market participants from filling them, which fraudulently represented the state of the market, so he could purchase 10 contracts at a below-market price and then sell them immediately thereafter for a higher price, in order to obtain a profit of approximately $100 in less than a second;

In violation of Title 18, United States Code, Section 1348.

10

## COUNT FOUR
(Commodity Fraud)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     Paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2.     On or about September 13, 2011, at approximately 10:03 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL COSCIA,

defendant herein, knowingly executed the scheme by transmitting and causing to be transmitted to a CME Group server soybean oil commodity futures contract orders that he caused to be programmed to quickly cancel in order to prevent other market participants from filling them, which fraudulently represented the state of the market, so he could sell 10 contracts at a above-market price and then purchase them immediately thereafter for a lower price, in order to obtain a profit of approximately $60 in less than a second;

In violation of Title 18, United States Code, Section 1348.

## COUNT FIVE
### (Commodity Fraud)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.    Paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2.    On or about September 23, 2011, at approximately 8:33 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL COSCIA,

defendant herein, knowingly executed the scheme by transmitting and causing to be transmitted to a CME Group server Pounds FX currency futures contract orders that he caused to be programmed to quickly cancel in order to prevent other market participants from filling them, which fraudulently represented the state of the market, so he could purchase 18 contracts at a below-market price and then sell them immediately thereafter for a higher price, in order to obtain a profit of approximately $112.50 in less than a second;

In violation of Title 18, United States Code, Section 1348.

12

## COUNT SIX
### (Commodity Fraud)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.   Paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2.   On or about September 28, 2011, at approximately 11:26 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MICHAEL COSCIA,

defendant herein, knowingly executed the scheme by transmitting and causing to be transmitted to a CME Group server high-grade copper commodity futures contract orders that he caused to be programmed to quickly cancel in order to prevent other market participants from filling them, which fraudulently represented the state of the market, so he could sell five contracts at a above-market price and then purchase them immediately thereafter for a lower price, in order to obtain a profit of approximately $62.50 in less than a second;

In violation of Title 18, United States Code, Section 1348.

COUNT SEVEN
(Spoofing)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.      Paragraph 1 of Count One of this indictment is incorporated here.

2.      On or about September 1, 2011, at approximately 4:54 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL COSCIA,

defendant herein, knowingly engaged in trading, practice, and conduct, on and subject to the rules of CME Group markets, that was, was of the character of, and was commonly known to the trade as, "spoofing," by causing to be transmitted to a CME Group server Euro FX currency futures contract orders that he intended to cancel before execution, so he could purchase 14 contracts at a below-market price and then sell them immediately thereafter for a higher price, in order to obtain a profit of approximately $175 in less than a second;

In violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

14

## COUNT EIGHT
### (Spoofing)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.    Paragraph 1 of Count One of this indictment is incorporated here.

2.    On or about September 2, 2011, at approximately 9:39 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MICHAEL COSCIA,

defendant herein, knowingly engaged in trading, practice, and conduct, on and subject to the rules of CME Group markets, that was, was of the character of, and was commonly known to the trade as, "spoofing," by causing to be transmitted to a CME Group server gold commodity futures contract orders that he intended to cancel before execution, so he could purchase 28 contracts at a below-market price and then sell them immediately thereafter for a higher price, in order to obtain a profit of approximately $560 in less than a second;

In violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

15

## COUNT NINE
(Spoofing)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.    Paragraph 1 of Count One of this indictment is incorporated here.

2.    On or about September 12, 2011, at approximately 11:54 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL COSCIA,

defendant herein, knowingly engaged in trading, practice, and conduct, on and subject to the rules of CME Group markets, that was, was of the character of, and was commonly known to the trade as, "spoofing," by causing to be transmitted to a CME Group server soybean meal commodity futures contract orders that he intended to cancel before execution, so he could purchase 10 contracts at a below-market price and then sell them immediately thereafter for a higher price, in order to obtain a profit of approximately $100 in less than a second;

In violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

16

## COUNT TEN
(Spoofing)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     Paragraph 1 of Count One of this indictment is incorporated here.

2.     On or about September 13, 2011, at approximately 10:03 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MICHAEL COSCIA,

defendant herein, knowingly engaged in trading, practice, and conduct, on and subject to the rules of CME Group markets, that was, was of the character of, and was commonly known to the trade as, "spoofing," by causing to be transmitted to a CME Group server soybean oil commodity futures contract orders that he intended to cancel before execution, so he could sell 10 contracts at a above-market price and then purchase them immediately thereafter for a lower price, in order to obtain a profit of approximately $60 in less than a second;

In violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

17

## COUNT ELEVEN
(Spoofing)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.    Paragraph 1 of Count One of this indictment is incorporated here.

2.    On or about September 23, 2011, at approximately 8:33 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MICHAEL COSCIA,

defendant herein, knowingly engaged in trading, practice, and conduct, on and subject to the rules of CME Group markets, that was, was of the character of, and was commonly known to the trade as, "spoofing," by causing to be transmitted to a CME Group server Pounds FX currency futures contract orders that he intended to cancel before execution, so he could purchase 18 contracts at a below-market price and then sell them immediately thereafter for a higher price, in order to obtain a profit of approximately $112.50 in less than a second;

In violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

## COUNT TWELVE
(Spoofing)

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.    Paragraph 1 of Count One of this indictment is incorporated here.

2.    On or about September 28, 2011, at approximately 11:26 a.m., at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

## MICHAEL COSCIA,

defendant herein, knowingly engaged in trading, practice, and conduct, on and subject to the rules of CME Group markets, that was, was of the character of, and was commonly known to the trade as, "spoofing," by causing to be transmitted to a CME Group server high-grade copper commodity futures contract orders that he intended to cancel before execution, so he could sell five contracts at a above-market price and then purchase them immediately thereafter for a lower price, in order to obtain a profit of approximately $62.50 in less than a second;

In violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).


A TRUE BILL:


_____
FOREPERSON


_____
UNITED STATES ATTORNEY

19